# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHERRI B. MEADE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-39-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Sherri B. Meade requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Court finds that the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 13, 1961, and she was forty-seven years old at the time of the administrative hearing. She earned her GED and attended Kiamichi Vocational Technical School where she earned an EMT license (Tr. 33). She has past relevant work as an emergency medication technician, receptionist, sales person, and disc jockey (Tr. 23). The claimant alleges that she has been unable to work since January 1, 2005, because of depression, bipolar disorder, and severe bone pain (Tr. 138).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on February 6, 2006. The Commissioner denied her applications. ALJ Michael A. Kirkpatrick held an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 22, 2008. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981; 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as

defined in 20 C.F.R. §§ 404.1567(b); 416.967(b), but that due to mental limitations, the claimant would be limited to no more than simple, routine, unskilled tasks which do not required interaction with the general public (Tr. 19). While the ALJ found that claimant was unable to perform past relevant work, he nonetheless found that there was work the claimant could perform in the national economy, *i. e.*, housekeeping cleaner, hand bander, bakery racker (Tr. 24). Thus, the ALJ concluded that the claimant was not disabled (Tr. 25).

**Review**

The claimant contends that the ALJ erred: (i) by ignoring probative evidence related to claimant's mental impairments that conflicted with his findings; ii) by failing to properly analyze the opinions of the claimant's physician Dr. Koteswar Rao Surredi; and iii) by failing to properly analyze the "other source" opinion of claimant's counselor Ms. Tammie Wavada. The Court finds that the ALJ failed to properly analyze the medical evidence of record.

The claimant began receiving mental health treatment in March 2006 at Mental Health and Substance Abuse Centers of Southern Oklahoma (MHSSO). The diagnosis at that time was bipolar disorder, and she was noted to have severe functional impairment in the categories of feeling/mood/affect, thinking/mental process, and role performance (Tr. 268). Written notes reveal that claimant was experiencing moderate to severe depression which caused feelings of hopelessness, crying spells, and a loss of interest in social and family contact, moderate to severe anxiety, and a problem with rage (Tr. 269). Her GAF

was assessed to be 52 (Tr. 268). On April 25, 2006, a treatment plan was prepared and the claimant began counseling on April 27, 2006 at which time the claimant stated that "she does not deal possitively (sic) with anxiety and that she wants to learn how to" (Tr. 337). The claimant was noted to be experiencing moderate to severe mood swings throughout her treatment at MHSSO (332-37). On October 30, 2006, Mr. Richard D. Beishline, M.S. wrote that the claimant "has made little progress since last seen" and noted that claimant was seeing things out of the corner of her eye, had become more anxious and paranoid, and that her prognosis was fair (Tr. 399). She was noted to be withdrawn, critical, and irritable, have inadequate memory, and that she prefers not to have friends (Tr. 390-95). The claimant was hospitalized on February 1, 2008 at Red Rock Adult Crisis Care with a diagnoses of bipolar disorder and personality disorder (Tr. 347). The claimant reported being afraid of inflicting self-harm due to her feelings of depression (Tr. 348). She was stabilized and released on February 4, 2008 with a GAF of 48 (Tr. 354).

On August 25, 2008, the claimant's counselor at MHSSO, Tammie Wavada, completed a Residual Functional Capacity Assessment Form (Mental) on claimant's behalf in which she noted claimant's primary diagnosis of bipolar disorder and secondary diagnosis of mixed severe depression without psychotic features (Tr. 404). As such, Ms. Wavada opined that claimant was markedly limited in the following functional categories: i) ability to remember locations and work-like procedures; ii) ability to carry out detailed instructions; iii) ability to maintain attention and concentration for extended

periods; iv) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; v) ability to sustain an ordinary routine without special supervision; vi) ability to work in coordination with or proximity to others without being distracted by them; vii) ability to make simple work-related decisions; vii) ability to complete a normal workday and work week without interruptions from psychologically based symptoms; viii) ability to accept instructions and respond appropriately to criticism from supervisors; ix) ability to respond appropriately to changes in the work setting; and x) ability to set realistic goals or make plans independently of others (Tr. 404-08).

The claimant began receiving treatment from Dr. Koteswar Rao Surredi, M.D. in October 2005, at which time she presented with complaints of feeling faint and tingling in her arms (Tr. 280). In January 2006, the claimant was tearful and feeling bad, and she was noted to be taking Zoloft (Tr. 280). One month later, she was treated for pain in her arms, shoulders, and back and weakness (Tr. 277). On February 24, 2006, the claimant was noted to have acute and chronic anxiety, mild insomnia, chronic fatigue syndrome, and myofascial pain syndrome (Tr. 275). Dr. Surredi completed a Mental Status Form on April 10, 2006 (Tr. 273). He wrote that claimant is depressed, unable to cope with or handle any stress, and suffered from bipolar disorder (Tr. 273).

On April 28, 2006, the claimant was evaluated by state examining physician Dr. Terry Kilgore, M.D. (Tr. 282-88). Her range of motion was decreased in her lumbosacral spine (flexion, extension, left bend, and right bend) and cervical spine (flexion, extension,

left rotation, and right rotation) (Tr. 282). Dr. Kilgore's impression was that claimant had major depression, bipolar disease, and diffuse musculoskeletal pain (Tr. 288).

The claimant was examined by state physician Dr. Patrick Turnock, Ph.D. on April 29, 2006 (Tr. 289-91). Dr. Turnock noted that the claimant tended to "become a bit distracted and tend[ed] to lose her train of thought frequently" and that she was "somewhat tearful at times" (Tr. 290). Dr. Turnock found that claimant's long-term memory was mildly impaired and her short-term memory was moderately impaired (Tr. 290). He again noted that claimant "tended to lose track of her answers as she was responding to interview questions fairly frequently" (Tr. 290). Dr. Turnock's diagnostic impression was that claimant had major depressive disorder, severe, partially controlled with medication (Tr. 291). He wrote that claimant's depression was debilitating at the time of examination and that "[o]nce her depression is adequately controlled, which at the moment it is not, then it is likely that she would, *at that time* be able to return to work and to a place where she would be able to maintain gainful employment" (Tr. 291) [emphasis added].

On May 17, 2006, Dr. Cynthia Kampschaefer, Psy.D. completed a Psychiatric Review Technique (PRT) in which she found that claimant suffered from depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activites, sleep disturbance, decreased energy, and difficulty concentrating or thinking (Tr. 304). As a result, she found that claimant was moderately limited in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or

pace (Tr. 311). Dr. Kampschaefer also completed a Mental Residual Functional Capacity Assessment and found that claimant was markedly limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public (Tr. 315-16). Her written notes state that claimant "can understand, remember and carry out simple tasks[,]" "relate superficially for work purposes[,]" and "can adapt" (Tr. 317).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a

specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ attributed little weight to Dr. Surredi's opinion because he declined to recommend that claimant seek treatment from a mental health care professional and Dr. Surredi's opinion was based "on an assessment of an impairment outside his area of expertise" (Tr. 21). The ALJ's analysis is flawed.

First, the ALJ failed to analyze Dr. Surredi's opinion in accordance with the *Watkins* factors. *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. Next, the reason given by the ALJ for discrediting Dr. Surredi's opinion is not supported by the medical record. Dr. Surredi *did* refer the claimant for mental health treatment. On February 6, 2006, Dr. Surredi wrote in his treatment notes that he "[a]dvised and discussed seeing a neurologist or a psychiatrist for a second opinion" (Tr. 277). Further, although the ALJ does discuss the claimant's

psychiatric treatment elsewhere in the opinion, the ALJ failed to consider the fact that claimant *did* seek psychiatric treatment beginning in March 2006, both outpatient (at MHSSO) and inpatient (at Red Rock Adult Crisis Care), in the context of evaluating Dr. Surredi's opinion. Thus, the reason given by the ALJ for discrediting Dr. Surredi's opinion is not supported by the record, and therefore is not supported by substantial evidence.

In addition, Social Security Ruling 96-6p indicates that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at \*4. These opinions are to be treated as medical opinions from non-examining sources. *Id*. at \*2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart*, 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii).

The ALJ clearly erred in his analysis of state examining physician Dr. Turnock's opinion. First, while the ALJ summarized Dr. Turnock's opinion, he wholly failed to analyze it in accordance with SSR 96-6p and the factors set out in 20 C.F.R §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6). Next, the ALJ mischaracterized Dr. Turnock's written comments and ignored probative evidence in discussing his opinion. While the ALJ summarized the opinion, he stated that Dr. Turnock findings were that "although the

claimant's condition was not at that time well controlled with medication, he stated that with referral to a psychiatrist and adjusting her antidepressant medication she would be able to return to and maintain gainful employment" (Tr. 21). The ALJ, however, omitted the fact that Dr. Turnock *did* find that claimant's depression was debilitating at the time of examination, and the ALJ failed to address the fact that Dr. Turnock did not give any indication as to how long it might take for claimant to get enough control over her depression to return to gainful employment (Tr. 291). "An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). Instead of discussing these probative findings, the ALJ simply stated that Dr. Turnock's opinion was "consistent with those of other physicians regarding the claimant's vague complaints as well as the few observable symptoms" (Tr. 21). Thus, the ALJ's analysis of Dr. Turnock's opinion was erroneous.

Because the ALJ failed to properly analyze the medical evidence of record as outlined above, the Court concludes that the decision of the Commissioner is reversed and the case remanded to the ALJ for a proper analysis.

## Conclusion

The Court finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence.

Accordingly, the Magistrate Judge finds that the decision of the ALJ is REVERSED and REMANDED.

**DATED** this 26th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma